Pursuit Capital Management, In Re Pursuit, Sheppis v. Birch. Mr. Martin. Good morning, your honors. Craig Martin for Pursuit Parties. I would like to reserve four minutes of my time to reply. Done. Please proceed. Thank you, your honor. This is a case about whether a Chapter 7 trustee may sell his obligation to prosecute legal actions for the benefit of the estate to a non-fiduciary where the bankruptcy code has statutory language. Right. We're well familiar, Mr. Martin, with what kind of case it is. And on Friday, it appears that the bankruptcy court rendered a ruling. Yes. What, if any, impact does that have on what's going on Sure, certainly, your honor. In that decision, the bankruptcy court determined that it was divested of jurisdiction due to dependency of the appeal in this case. Was divested or was not divested? Was divested. Did she really say that? Or did she say, I'm not going to touch this because it's in front of the court of appeals. It's now in front of two courts at the same time. The defendants are responsible for maneuvering this case in a manner that's put it in front of two courts at the same time. And I'm not going to touch it. That's how it looked to me like maybe she was saying, not so much I can't, but I won't. I think that there's some of both in what your honor has just said, Judge Jordan, in that she looked at the differing causes of action and determined that there were potentially certain causes of action that had been inserted that arose under the bankruptcy code. And that because those were the ones that were primarily being challenged in this appeal, she was divested of jurisdiction with respect to those. I'm looking at page 21 of her opinion that says, I will not rule on the remaining defenses at this time. While not divested of jurisdiction to rule on these matters, it is within the court's discretion that the bankruptcy judge decide she was not divested of jurisdiction, but nonetheless was going to defer ruling until some ruling from our court. I think with respect to certain causes of action, yes. There are multiple counts in the complaint that has been filed. How about with respect to the very issue we're here grappling with? Here, sort of the central issue seems to be, these causes of action are not ones that could, those causes of action could never rightly have been transferred because they're ones that the trustee and the trustee alone can pursue. So any attempt to sell them to somebody is ipso facto unlawful. That's like, am I wrong that that's the heart of this case? In essence, yes. Okay. And isn't that the very thing that, as Judge Krauss just pointed out, that the bankruptcy court said, I'm not divested, but I'm not going to play this game. I'm not going to weigh in while you've put the same thing in front of the court of appeals. Isn't that what the court was saying? The point I'm trying to make that she is saying that with respect to some causes of action, Council 1, 2, and 3 in the complaint assert fraudulent transfer causes of action under state law through 544B. And I did read her decision to say that with respect to those, she was divested of jurisdiction, and that she would then use her discretion with respect to other causes of action that did not arise under those provisions of the bankruptcy code, and use that discretion to also divest herself of jurisdiction pending this court's decision. Okay. Well, we have in front of us then this question about whether this can even be something we can talk about because it's statutorily moot. And we have this two-part test in the Third Circuit. Everybody agrees that the first part is met here. Your clients didn't seek a stay, right? Correct. Undisputed. Undisputed. So we're here talking about that second prong and whether or not we could address this without affecting the validity of the sale. Now, if I understand your position correctly, it is essentially this. They bought a pig in a poke. They knew they weren't going to get to look in the bag because it was sold as is, where is, with all rights reserved. And if it turns out that the poke is empty, they've got nobody to blame but themselves. They still own the poke, whether there's a pig in it or not. So tough for them. It doesn't affect the validity of the sale. That's what I understand you to be arguing. Am I correct? Yes. Okay. Now, if that's the truth, how can you – I want you to address sort of just basic contract law. Isn't it just basic contract law that if the central point of an agreement is frustrated or made legally impossible, that that undermines the validity of the contract. There is no longer a contract. I accept that as a general principle of contract law, yes. Okay. So if it is the case that someone were to rule that these choices in action could not be transferred because the trustee and the trustee alone can pursue them, does that not undermine and speak directly to the validity of the contract that sold those causes of actions to the creditors group? How can we rule that way and not have it address the validity of the sale, given the general principle of contract law we've agreed on? Yes. And I would say that because I would submit that the purpose of the contract was not frustrated because initially the issue about whether they could even proceed as they did was raised within days of the trustee filing a motion to sell, transfer the causes of action. The issues were presented to the court at the sale hearing, and so they had knowledge that they were buying a risk, and that as a matter of contract law, it's our view, they accepted that risk. And perhaps, although we don't know the subjective intent of the trustee, the very reason the as-is, whereas, with no representations was put into the contract was such that if, as a matter of contract law, the bargain that they thought they were buying did not pan out, they would have no recourse to the trustee or the bankruptcy estate. So I would submit that upon regular contract principles, we don't have a... The issue is jurisdiction in this court to review. You have the failure to bring a motion to stay. You have what I read as a drop-dead statute. So whatever may have wrongfully transferred to that point, without the motion to stay, you simply don't preserve. Unless you can tell me what a conceivable remedy would be that would not impugn the validity of the sale itself. Certainly, Judge Stearns, two points there. One of the primary arguments is that there's somehow reliance here, and that we're undoing the expectations in the sale order because they would not have proceeded had they known about this risk. As I just stated, they did know about the risk, and they elected to close. And as a result, this court can rule that the assets conveyed could not have been properly conveyed without frustrating the expectations of the parties, and therefore, without undermining the order. Additionally... Your assertion depends on our accepting that what they bought was a risk, not what they bought was an asset. Right? Because if what they thought they were buying were causes of action, then don't you have to acknowledge that if they've got no cause of action, they bought nothing? Well, not exactly, because there was a release for the Reed Smith Raw Firm, and the $180,000 that was paid under the contract was paid for by the creditors and or the Reed Smith Law Firm. And we don't know who paid that $180,000. It's foreseeable that Reed Smith paid the full $180,000, got the release that it was entitled to, and has received the full benefit of its bargain, and that the rest of this was mere speculation. So the district court was just wrong in saying this goes to the validity of the contract, because clearly this was the central feature, and they wouldn't have paid for this if they thought they were buying something worthless. That's an error on the district court's part on appeal. Yes, I would agree with that, and I would also submit, and we said in our briefing, that there was no evidence regarding that reliance. I think when the district court wrote that... Isn't it clear on the face of it, Mr. Martin? I mean, they said, we want to pursue these actions, and we want to buy these causes of action. And the trustee said, I don't have the wherewithal to pursue them myself. The only way I can get some money into the estate is by selling these causes of action. So it looks to all the world like what was being bought and sold were causes of action, doesn't it? It does, but, Your Honor, these creditors have pending causes of action in multiple different districts, and it's foreseeable to us that they bought these for litigation strategy purposes, to have an alternate form to hedge their bets with respect to other litigation that they're already pursuing, asserting many of these very similar claims, if not identical claims, against the same defendants. So while in a situation where you perhaps have a Chapter 7 trustee selling causes of action, where a single creditor might pursue that remedy for a wide group of creditors, I think that's factually distinguishable from what we have here, where we have essentially a single creditor of an estate, already aggressively pursuing litigation against defendants. When you say a single creditor, I counted up seven parties. Fair point. I may have misspoke. They're acting as a group, and they have each asserted claims. And that's not unusual, right? It's not unusual for creditors in a bankruptcy to find a common alley of interest and proceed as a group, right? I don't disagree with that, and that's correct. Just one point I would like to make. The district court also looked at this another way. Even accepting the premise that if your argument is that what was sold they understood to have no value, to be unenforceable, that if you step back from that, the very premise of the argument is that the sale itself, the order of sale, is valid. And while they own this interest, they don't have standing to enforce this interest. But that premise also voids any basis for appeal of the order of sale, doesn't it? I don't think so, because in the underlying order, we objected to this at the trial court, and the bankruptcy court acknowledged our objection by putting a provision in the order that reserved our right to challenge standing and jurisdiction in the future. And I would respectfully submit that the way the district court looked at that was that he viewed that as only permitting us to raise that challenge in a future trial court. We believe it also allows us to raise it in the appellate court. The language is quite broad. And, in fact, if the argument is that we can't raise it on appeal but we can raise it in the trial court, the logical extension of that is that I can get to this appellate court some point in the future on the very exact same issue that I'm arguing today. So our view is that we reserve that right. The bankruptcy court recognized that we had sought it. Rather than litigating the issue, she gave us that right to reserve, and we appealed it. We didn't need to seek a stay. When you say we didn't need to seek a stay, how do you deal with the language of the statute which says you need to seek a stay? Well, two ways. The first is the one we've been discussing that I think the court can enter relief without changing the terms of the order because you would be giving them what they bargained for. But, secondly, Section 363M says that the appeal would be moot if it relates to a sale under subsection B. Subsection B says in 363 that the lower court may only approve a sale of property of the estate. Section 541 governs what is property of the estate. Indeed, our briefing argues vigorously that the causes of action at issue and the avoidance powers are not property of the estate. All those things go to the merits, right? You seem to be saying that the language of the statute about a stay doesn't really apply because you have to address the merits to know whether the stay applies. That seems to be sort of turning the statute on its head. I thought the whole purpose of 363M was to give a finality to these sorts of things so that you wouldn't be dealing with them in a setting like this, and if you wanted to preserve your rights, you knew how to do it, and that was to get a stay. I mean, isn't that the whole point? You can take certain steps, and you can freeze things in place, and then you can make your argument. And if you don't, 363M kicks in and says, no, we're not getting to the merits. You didn't address it and reserve your right. I think in the normal setting, the way you stated it is probably the correct interpretation, and I think this court in certain of its cases would follow that. But in this case, we preserved our right to assert this, and we carved out in the order of the trial court the right to challenge this. And while I regret that we didn't have this decision in our briefing, we did last night as we were preparing and mooting find a Tenth Circuit case that essentially said when you preserve the right to proceed on a challenge and a party closes over the risk that you would proceed on that challenge, that the appeal is not moot because the party otherwise protected from that is aware that it's at risk. And I'd be happy to submit that on a 28J letter. It's not a new decision, but it is something that unfortunately we didn't find until last night as we were preparing for argument. Do you have the site? Yes. The name of the case is Page, P-A-I-G-E, versus, I believe it's pronounced Juber, J-U-B-E-R. It is 685-F3-1160, and that's from the Tenth Circuit Court of Appeals in 2012. All right. Thanks, Mr. Martin. We've got your argument, and we'll have you back on for a while. Thank you. Thank you. Ms. Riley. Good morning. Wendy Riley on behalf of the creditors who are pursuing the claims here on behalf of the estate. Would you start where Mr. Martin, in essence, ended, which is you knew what was going on here because we reserve all the rights in the bankruptcy court in the sale order itself, and you've got no basis for either saying you didn't know you were at risk or that your deal is somehow undermined because you knew all you were buying was the possibility you could proceed, not an actual right to proceed on the causes of action. I think there's a procedural and a substantive point to that. And procedurally first, I actually don't think they preserve their right to appeal to the district court in the Third Circuit. What I believe they did, which I think is reinforced by the bankruptcy court's decision on Friday, is they reserved their right to raise whatever defenses they would have, including to standing, when an adversary proceeding was filed. That's what I think the bankruptcy court was expecting, and that's what I think was the reservation of rights that's provided for in the sale order. And interestingly, as I think the court knows because of the stay application, what happened was they actually didn't raise this argument to the bankruptcy court on the motion to dismiss that they made in response to our adversary proceeding. Instead, they only raised it on a direct appeal up to the district court. And then subsequently, after the district court ruled against them, they then tried to swap. They had initially asked the bankruptcy court to stay the action or dismiss it, pending the resolution at the district court. The district court went the other way, and then they tried to get the Third Circuit to stay its contemplation of this whole issue to try to take a run at the bankruptcy court. So now we actually do have two proceedings happening at the same time. So what do we make, then, of the statement in the bankruptcy court's decision Friday that any ruling on the motion to dismiss will not alter or enlarge the sale order, that these defenses were specifically preserved in the sale order, and so ruling on those defenses could be viewed as enforcing the sale order? I recall that statement, and I'm actually not 100% sure what the bankruptcy court had in mind there, although to some extent I thought she was saying because of other statements in her opinion that they had adequately preserved their right to raise this substantive issue, the merits issue, to her in response to the motion to dismiss, although she acknowledges, I think, that they did not. And then on the substantive point, the pig in the poke argument, you know, that we're sort of no problem because we knew what we were getting into, I think there are two issues, frankly, at least half of them you've adequately already addressed in your questionings. On your questioning, one, the entire central core focus of that sale agreement was the conveyance of the causes of actions themselves and the right to bring the causes of action, so I think it would entirely undermine and invalidate the sale to go the other way on this issue. But also I think it's important to note that this is not some crazy newfound theory where we were buying thinking, well, what the heck, we have absolutely no idea if there's any legal merit to this, but let's take a stab. You know, the case law, we believe, particularly in this third circuit under CyberGenics II, entirely maps onto our situation, and we believe that it is fully supportive, and so to the extent there was some risk, I don't think it equates to buying air, as the other side likes to say. How do we square what you almost seem to be arguing for a per se statutory mootness point, which is, look, this has to be so collateral, whatever it is they're talking about, that the question they're putting in front of you in this instance, third circuit, it can be disposed of because it doesn't really address the central point. Maybe I'm misunderstanding you, but I'm trying to get back to what Judge Krause was asking. When the bankruptcy court looked at this as recently as last Friday, the bankruptcy court seemed to be saying that this is something that is a merits question, and you can't get to it without getting to the merits. Do you understand what I'm trying to ask? I think so. I think she's saying she believes she can reach it, but she is not. There's another statement, which I think informs the statement that Judge Krause referenced, where she wasn't sure whether the district court in the third circuit had this issue properly before then. She certainly identifies for herself, ruling on those defenses could be viewed as enforcing the sale order, therefore I can rule on the standing and jurisdictional defenses, but the unique posture of this case compels a second look, and then she lays out the argument for viewing it the other way. Those are the very issues that we are discussing now at argument. To the extent that the bankruptcy court deemed the defenses as viewable as simply enforcing the sale order, why wouldn't that be equally true in our approach to the appeal of the district court's review of the sale order? I think the only reason is 363M, and I don't think we're actually trying to urge a per se statutory mootness standard. I know that's not the standard within the third circuit. It is something less than that, but our argument is really where it's a central element, and here we would say it is the central element. That actually does create statutory mootness. I will mention, because time is short and I want to make sure this gets out there, we already were talking about this on our side, but particularly in light of the bankruptcy court's decision on Friday, I just wanted to raise that we do believe it's statutorily moot. We think it meets the standard that is applied within the third circuit, but given the procedural uniqueness of this situation, we would welcome this court, in light of the way this is played out, to actually reach the merits. So I just want to clearly convey, and maybe it's a nuanced position, we think it's statutorily moot, but we're not actually opposed to the court reaching the merits, should the court decide that that is appropriate and that you have the power to do it, in light of the fact that it's now been fully briefed, you've all prepared for it, we've all prepared for it, and it's inevitably going to come back to this court. So from judicial efficiency, I don't see a way around the third circuit reaching this issue. How about because the statute tells us not to? That's our view. Our view is the statute tells us not to. But if I'm hearing some sense that you think that there's wiggle room to actually reach this issue, because, for example, if you were going to confirm our understanding of the state of the law, it wouldn't invalidate the sale order. You know, if you think there's a way to do it, we would welcome it. How about that we don't have a decision on the defenses and the merits themselves to review? I mean, even if we got past statutory mootness, wouldn't we be remanding for the district court, or even bankruptcy court, to ultimately to address the very issues that they abstained from addressing? In fact, issues that it now sounds are pending, you know, and at least at this point have been presented to the bankruptcy judge. And this would go back for some decision by a court for us to review in any event, wouldn't it? I think that is what will happen. So if this court, which I think would be totally legally appropriate, affirms the district court's statutory mootness finding and dismisses the case, then it's already been briefed, it's already been argued before the Delaware Bankruptcy Court. I presume she will rule on the waiver issue, on whether defendants waived the ability to assert this by not briefing it in their motion to dismiss. And she will, if she finds that it was not waived, she will rule on the substantive issue of whether it is ever permissible for a trustee to authorize creditors to pursue fraudulent conveyance actions on behalf of an estate with trustee approval, bankruptcy court approval, and where the monies will come back into the estate for distribution per the code, and whether in this instance it was an appropriate exercise of the trustee's fiduciary duty and authority. This may be a little simple-minded, but go back to what you said at the beginning. There was a reservation of defenses. But if I understand you, what you're saying is, yes, they have the right at the point we actually, or my clients, prosecute the causes of action to raise whatever defense they have in mind. We talked about moral turpitude earlier. I heard the word champerty, I think, somewhere in one of the briefs, which, again, I haven't heard for a while. But, in effect, the keys are in our hands. Unless we choose to prosecute the claims, this reservation means nothing, and what it certainly doesn't do is annul the effect of the enforcement of the statute with respect to appellate standing. Yes, I think with one caveat, that had the defendants stayed, moved for a stay, and gotten a stay, then I think they could have attempted to directly appeal, and then at that point the district court could have determined the first prong would have been satisfied, and the district court could then have determined whether a ruling on the merits would have invalidated the sale order. But given that there was no stay, and we think they can't satisfy the second prong, it's not the same set up, but I would just point out that had they moved for a stay, I think there would be an opening to make the argument on direct appeal. You articulate a standard of defense being a central element. What do you rely upon for that? Is that Pittsburgh food, or is there some other case law as to distinguishing between more peripheral? I think it's the Alabama Aircraft Industries case, which is a Third Circuit case from 2013. Quote, a challenge to an authorized transaction will necessarily impact that transaction's validity if it seeks to affect the validity of a central element, such as the sale price. And that's quoting Pittsburgh food, but I think we specifically cited Alabama in our briefing. One just factual point, if I may. Appellants mentioned that there was this other issue, there was a settlement with respect to Reed-Smith, and I just wanted to clarify, with respect to the creditor group that actually purchased the claims and are pursuing the claims, certainly as to four of the five creditors, and I believe it's true with the fifth, but I'm not 100% certain, that had nothing to do with us. Well, they say in footnote 20, I think it's of their opening brief, that that actually proves that it's not central to the deal here, that there was Alpha Beta and Reed-Smith, and they were doing separate things. So that really demonstrates that, how did they put it, that presumably means they didn't value the claims to be worth anything. That is, that those other parties didn't think these claims were worth anything. How can you then trust that that's really the central value of this deal? They're looking for just a chance to pursue litigation, not with an eye toward actually winning something, but keeping the ball going. That's kind of how I read that footnote 20, if you remember it. What's your response to that? This goes back to the pig and the poke. You didn't really buy this thinking you could have a shot at it. I think it actually suggests the opposite. I'm representing to the court that for certain four of the five creditors were not in that case, that got settled and were out, so we had no value. That gave nothing to us. We would have paid no value and paid no value for that. What we are in this sale agreement for is the ability to prosecute the claims and try to get them back into the estate. And in terms of this litigiousness issue that comes up throughout the briefing, just to point out, what's going on here is that the debtor owed millions of dollars to investors, including a $5 million more with interest, final judgment by a New York court. It's not on appeal. It's a final judgment and has never been paid. And so rather than paying the amounts, the debtor filed Chapter 7 bankruptcy. And what the creditor group is trying to do is get any fraudulently transferred funds back into the estate to pay the debts. There wouldn't be all this litigation if they had paid the investors the money that were owed. Can I ask you one thing with my colleague's indulgence here? I realize you've got to represent your client's interests, and I'm going to ask the same thing to Mr. Martin. Is this two-pronged test that we've got here in the Third Circuit, that is we've eschewed the per se test for statutory mootness, which requires a stay, and in the absence of a stay, that's it, statutory moot. Does this procedural posture we find ourselves in now, where the bankruptcy court and we have it at the same time, at one point the district court added and said, I'm not touching that, does it indicate that there's a problem with having this second prong in the test? So in other words, that creates an implementation difficulty for the courts? Yes, because it's pretty tough to how do we talk about the validity of the contract without getting pulled into the merits. How can you start talking about statutory mootness under our two-part test without necessarily getting pulled into a discussion of the merits, which evidently the several courts having been given it have decided they'd really rather not do. I hear you, Your Honor. I will acknowledge I have not fully analyzed the pros and cons to the different approaches. I'm aware that there are at least two different approaches, and I suppose I would say I can imagine a situation where there was an attempt to appeal a final order that really went to a very peripheral issue. Let's say there was a final order that addressed four issues, three of them were absolutely central and there was one that was a very small component. Perhaps in that instance, if it was peripheral, there would be the ability then to appeal that issue. I can't think of a concrete example, but it doesn't seem impossible to me that there would be a reason for that, and I presume that the Third Circuit analyzed the issue and felt that the other approach was too heavy-handed and didn't provide for the ability for more evidence. You have a safety valve for an obviously collateral peripheral kind of a point. Yes. Okay. That's helpful. Thanks, Ms. Milo. Thank you, Your Honor. Mr. Martin? I'll actually ask you to start with the question I just asked her. I thought you might. Yes. I would say that this Circuit's two-part test is far preferable to the per se rule for the following reasons. First is that bankruptcy moves fast, quickly, and oftentimes there's limited ability for a bankruptcy court to fully express and review situations due to the economics involved. In fact, this court, in similar settings, although not statutory mootness, equitable mootness, has said almost exactly what Your Honor just said, which is that there needs to be a check for this court to have the ability to review those situations. I'm referring to the Syncrude case, which was an equitable mootness case, and where the court had a footnote regarding that they were not speaking about that in the context of statutory mootness, leaving the question open slightly. But in the ICL Holdings case, which is a decision of the court and that we cited, I think it's from 2015, the court also recognized the need for the ability of the court to have a recourse to investigating situations where it's appropriate and where it can do so in an appropriate fashion. And we submit that that is one of these cases. The final policy reason for that, I think, was revealed in this court's recent decision. In the Revel case, where, in fact, a party did move for a stay pending appeal of the sale of the Revel casino, I think Judge Krause was on that panel. And the concern was that it was so difficult to get a stay pending appeal that the court, in fact, relaxed the standards and focused on the first two prongs of the four prongs regarding getting a stay pending appeal. So I think this court recognizes that in the context of bankruptcy, per se rules that prohibit this court's review are disfavored, and that this court seems to like to proceed with the flexibility to review appropriate settings. How do we avoid, and this case points up the problem where, as the bankruptcy court was lamenting on Friday, the issue is now pending, has caused confusion in multiple courts, and is being presented in two different forums for a court to decide these issues for the very first time? Yeah. And one point I would like to make is we did file a motion advising this court that I don't think any of you were on the motion panel advising the court that the case had been remanded and that it might be heard by the bankruptcy court, and asking for this appeal to be stayed. That motion was denied. So we then went back to the bankruptcy court, and she had an argument, and we briefed on the issues, and we made the argument. I think to clarify what I think you asked me at the very beginning of argument on the other aspects of our motion to dismiss, for example, we moved to dismiss because the partnership agreement at issue here has an arbitration clause. So we advocated at the last hearing in front of her that she could still rule on the arbitration clause argument that we had made. That would have been case dispositive. I think the way I read, and that's what I was saying earlier is the way I read her decision, is that some of those other arguments that aren't related are the ones that she was going to discretionarily divest herself of jurisdiction. So I certainly would have preferred, as counsel with a client that has to pay for all of this, to only have this in front of one court. Unfortunately, we find ourselves where we are. Now what I've heard is potentially a waiver of the 363M right from the podium today, saying that to the extent that the court thinks that it's not allowed to hear it, that they would actually prefer this court to hear it. I think that constitutes a waiver of the right. Certainly, I thought she was pretty careful to say that it's statutorily moot, but if you want to take it, we're not going to jump up and down. It doesn't sound like a waiver to me. If you've got any last point you want to make, go ahead and make it this morning. Fair enough, Your Honor. I would just ask that the court review, especially our substantive arguments. I know we focused on mootness. The Hartford underwriters, the Jevick decisions, many of the recent Supreme Court decisions support our substantive relief. We've made our argument on mootness. I would ask the court to grant our appeal and give us the relief that we've requested in the briefing. All right. Thank you, Mr. Martin. Thank you. Thank you, Ms. Riley. Appreciate the well-argued case. We've got the matter under advisement.